† HIGGINS v. HIGGINS.

1. UNITING OF LEGAL AND EQUITABLE ESTATE IN THE SAME PERSON.

Where a legal estate in realty and an equitable one, coming through different persons, unite in the same holder, the course of the legal estate, and not that of the equitable, determines whether the holder of both, does or does not have an ancestral estate."

2. WHEN AN ESTATE IS DEEMED ANCESTRAL.

D. H. inherited an equitable estate from his father, and subsequently, by action in a court of competent jurisdiction, for specific performance of the contract by which the father acquired the equitable estate, secured the outstanding legal title to the same estate; *Held*, the legal title was not acquired from a different source, or by purchase, but from the same source and by inheritance; and the whole estate is ancestral.

Appeal from the Court of Common Pleas of Wyandot county.

DAY, J.

The action is by the plaintiff, Josephine Higgins, to obtain an order of the court quieting her to title to real estate described in her petition, in which she says in substance: One Darlton Higgins was seized of an estate in fee in the lands described, comprising 160 acres; that Darlton died in August, 1890, intestate, leaving no children or wife, no brother or sister, but just one mother and she a widow, the plaintiff in the case, that she is seized of an estate in fee, and is in the actual possession of the said lands, and she prays a decree quieting her title as against the adverse claims of defendants.

John Higgins is the only defendant named in the petition, but Ransom Higgins and Lavina Wonders were subsequently made defendants with leave to plead. The defendants all made answer: John Higgins, in effect, disclaiming all interest in the land in question, and Ransom Higgins and Lavina Wonders in substance asserting that title to the land in controversy came to Darlton Higgins by descent from his father, James Higgins; that Ransom and Lavina are the only brother and sister of said James Higgins, and plaintiff is his widow. That on the death of Darlton Higgins, intestate plaintiff became possessed of an estate for life, only, in said real estate, and that the title in fee, subject to such estate for life, passed to and vested in the brother and sister of James Higgins, deceased. A reply denies that title came to Darlton Higgins by descent, and asserting it came by purchase.

The relationship of these parties and persons named is conceded. James Higgins, deceased, was son of John Higgins, husband of plaintiff, father of Darlton and brother of Ransom Higgins and Lavina Wonders. James Higgins died intestate, leaving Darlton Higgins his only heir and plaintiff, his widow. Darlton has since died intestate, without relatives or heirs other than his mother, Josephine Higgins, the plaintiff, and his uncle and aunt, Ransom Higgins and Lavina Wonders and grandfather, John Higgins, the defendants herein.

There is no question or difference of opinion as to the law of descent in the case. If the fact be that title to the land

†Reversed by Supreme Court; opinion 57 O. S., 239.

came to Darlton Higgins by descent from his ancestor, James Higgins, then it passed to and vested, in fee, in Ransom Higgins and Lavina Wonders subject to or encumbered by a life estate in plaintiff. If the title came to Darlton by purchase, the title in fee vested in the plaintiff, Josephine Higgins. So the only question is one of fact, and is : Is the property in question ancestral or non-ancestral? Did title come to Darlton Higgins by purchase by him or by descent from his father, James Higgins, deceased. And upon that question the undisputed facts are : John Higgins and his son, James Higgins, father of Darlton, in 1869 or 1870, entered into an agreement, not in writing, on consideration partly good and partly valuable, whereby John sold and agreed to convey by good and sufficient deed, to James, the 160 acres described and 40 other acres; put James in possession under the agreement, which possession and use James maintained, until his death in 1878. James occupied, used and improved the land as his own, and made payments on the purchase price. The purchase price was not fully paid, and no conveyance was executed. James died, intestate, leaving Darlton, a minor child, his only heir, and Josephine his widow. Darlton's guardian began an action against John Higgins for specific performance of the contract between John and James, by a conveyance of the legal title to Darlton. The litigation resulted in a finding of $2,200 due John Higgins, of the purchase price under the contract, and a decree of specific performance, ordering a conveyance of the legal title to Darlton in ten days, and in default the decree of the court to operate as such conveyance. By a proceeding in the probate court of Wyandot county, forty acres of the land included in the contract was sold by the guardian, and the proceeds used in paying the said sum of $2,200 balance due John Higgins of the purchase price, as found by the court in the case of specific performance ; and by this sale the balance of the purchase price of the land was paid in full. This is a statement of all the material facts of the transaction by which title to the real estate in question was vested in Darlton Higgins, deceased.

It is clear the basis of Darlton's rights in the land, was the contract of purchase and sale between John and James Higgins; the possession and use of it, and the partial payment of the purchase price, by James. At the beginning, therefore, the right or title, came to James Higgins by purchase from his father, and at his death descended to and vested in his heir at law, Darlton Higgins, and per force, whatever title was cast on Darlton was by descent. Counsel for plaintiff concedes this, but urges, that the title, at the time it vested in Darlton, was an equitable one, only ; that the subsequent proceeding for specific performance, and the payment of the balance of the purchase price by a sale of forty acres, conferred the legal title on Darlton ; that the equitable title merged in the legal, and the course of descent is controlled by the legal title. Also claiming that the transactions which resulted in securing the perfect legal title in Darlton, and the payment of the balance of the purchase money due on the contract, was substantially, both in law and fact, a purchase of the legal title by Darlton.

It is true that prior to the decree of specific performance Darlton's estate was only an equitable one. An equitable estate emerges in a legal one, and the course of descent is controled by the legal title. Such is the law in Ohio, so held by the supreme court in a number of cases, notably, and recently in the 50 Ohio St., 495 ; but how does all that affect the course of descent in this case? No matter what the character of the estate,

whether legal or equitable, it will descend, according to the provisions of the statute, to Ransom Higgins and Lavina Wonders, encumbered by an estate for life in Josephine Higgins, if the estate came to Darlton Higgins by descent—if it is ancestral property; and only will it pass to plaintiff if it is non-ancestral. Plaintiff can only hope to prevail in this case by making good the contention that the transactions, by which the legal title was secured and the remaining purchase money paid, was in legal effect, a purchase of the legal title by Darlton; and this, we much fear, she will not be able to do. The contention seems illogical and not supported by the facts appearing. To constitute the acquiring of the legal title, a sale to Darlton, and to characterize it as a purchase by him, it is necessary that the acquisition be wholly upon considerations and ·from sources entirely other and different than by which the equitable title came to him; but in the transaction by which the legal title was secured in him, the essential facts requisite to make it a purchase appear to be absent. There was no new or additional consideration passing from Darlton—no consideration in fact, other than that expressed in the original contract between John and James Higgins; nor was the legal title obtained from another person or from another source, but from the same person and source as was the equitable title. Darlton's attitude in the whole transaction was receptive; entirely so. No consideration, either valuable or good, passed from him, and the legal title came to him purely by virtue of the rights he inherited from his father. The right to invoke the aid of the law, through the proper courts, for specific performance of a contract and to sell a ward's land to pay debts, were rights acquired by James Higgins in his contract with his father; and those rights, with ·others, descended to Darlton, and the proceedings in court by which the legal title was secured was not the acquiring of any new or additional right from another, or the same source, but merely the perfecting—putting in the most favorable form, by the aid of the law, rights already possessed. No new right was obtained; simply an old one dressed up and made available for all purposes. There is not an element of bargain and sale in it, and no fact which, in a legal sense, even suggests a purchase of the legal title by Darlton. If there is such an element or fact, it has escaped our notice. The proceeding was solemnly had, pursuant to the provisions of law, in a court having juridiction of the matter. The decree vesting the legal title in Darlton was presumably, based on rights appearing from the contract between John and James Higgins and evidence concerning the transaction, and was made and entered by the court as being Darlton's right under the contract, and it seems ill natured and scarcely fair or just to the court to assert the transaction was a purchase.

We find the estate was ancestral, and there will be a finding and decree for the defendants, Ransom Higgins and Lavina Wonders, quieting their fee simple title. The petition is dismissed, and the plaintiff is required to pay all the costs.

*T. E. Grissell*, for Plaintiff.

*A. Blackford*, for Defendant.